Matt Valenti (SBN 253978)
AntiCancer, Inc.
7917 Ostrow Street
San Diego, CA 92111
Tel:  (619) 654-2555
Fax: (619) 268-4175
Email: mattvalenti@anticancer.com

Attorney for Plaintiff AntiCancer, Inc.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTICANCER, INC.,<br><br>           Plaintiff,<br><br>v.<br><br>LEICA MICROSYTEMS, INC., and<br>DOES 1-10, inclusive,<br><br>           Defendants. | Civil Action No.  3:11-cv-02756-DMS-JMA<br><br>**PLAINTIFF ANTICANCER, INC.'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** |

## I.        INTRODUCTION AND PROCEDURAL BACKGROUND.

        AntiCancer, Inc. ("AntiCancer") filed its Complaint against Defendant Leica Microsystems, Inc. ("Leica") on November 28, 2011, alleging Leica has infringed AntiCancer's U.S. Patent No. 6,649,159 (the "'159" patent) via its sale and marketing of its "Leica FCM 1000" device.

        Leica filed its motion to dismiss on January 10, 2012, arguing that AntiCancer did not properly allege jurisdiction, that this venue is improper, and that AntiCancer failed to state a claim for indirect infringement. (D.E. 6.)

After discovering additional information regarding Leica's activities, AntiCancer's counsel contacted Leica's counsel to seek consent to file an amended complaint.  To date, Leica has not consented to the amendment.

On February 9, 2012, AntiCancer filed a motion to amend its complaint pursuant to Fed. R. Civ. P. 15. (D.E. 10.)  Included as Exhibit A to that motion is its proposed First Amended Complaint ("FAC"). As explained in the motion to amend, the FAC contains newly-discovered evidence related AntiCancer's initial claim, as well as two new claims for infringement of AntiCancer's U.S. Patents Nos. 6,759,038 (the "'038" patent) and 6,251,384 (the "'384" patent).  The FAC also contains numerous facts related to Leica's contacts with California and with the Southern District in particular, and numerous facts related to Leica's indirect infringement.

After filing its motion to amend, AntiCancer's counsel contacted Leica's counsel to request that Leica withdraw its pending motion to dismiss.  Considering the liberality with which motions to amend are granted and the fact that the FAC would supersede the original complaint, rendering Leica's motion moot, AntiCancer urged Leica's counsel to withdraw its motion in order to conserve the parties' and the Court's resources.  As of this writing, Leica has not withdrawn its motion, and so AntiCancer proffers this opposition.

## II.     ARGUMENT.

### A.     AntiCancer's Proposed First Amended Complaint Renders This Motion Moot.

An amended complaint supersedes the original complaint. *Ferdik v. Bonzelet,* 963 F.2d 1258, 1262 (9th Cir. 1992).  *See, also*, Schwartzer, Tashima & Wagstaffe, CAL. PRAC. GUIDE: FED. CIV. PRO. BEFORE TRIAL (The Rutter Group 2010) 9:260 ("Defendant's Rule 12(b) motion to dismiss . . . is not a "responsive pleading" . . .Thus, as an alternative to opposing a motion to dismiss the original complaint, plaintiff may simply file and serve an amended complaint.").  AntiCancer's FAC, upon filing and service upon Leica, would render the arguments made in Leica's motion to dismiss moot,

2

since the FAC introduces significant new evidence and two new claims not addressed by Leica's motion.

In the event that the Court examines the question of whether AntiCancer's proposed FAC would be futile to cure any defects it may perceive in AntiCancer's original complaint, AntiCancer offers the following arguments related to its proposed FAC, which track the arguments made in Leica's motion.

**B.      This Court Has General and Specific Jurisdiction Over Leica.**

Personal jurisdiction may arise through "general" or "specific" theories. "General jurisdiction, on one hand, requires that the defendant have 'continuous and systematic' contacts with the forum state and confers personal jurisdiction even when the cause of action has no relationship with those contacts." *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1017 (Fed. Cir. 2009)(quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984)). "Specific jurisdiction, on the other hand, must be based on activities that arise out of or relate to the cause of action, and can exist even if the defendant's contacts are not continuous and systematic." *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-76 (1985)).

To prove general jurisdiction, AntiCancer must show that Leica "has contacts with the forum state that qualify as 'continuous and systematic general business contacts.'" *Campbell Pet Co. v. Miale*, 542 F.3d 879, 883 (Fed. Cir. 2008)(citing *Helicopteros*, 466 U.S. at 416). To prove specific jurisdiction, AntiCancer must show that Leica purposefully directed its activities at residents of the forum and that the claim arises out of or relates to those activities. *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1363 (Fed. Cir. 2006) (citing *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945).

Here, there is more than ample evidence that Leica has "continuous and systematic contacts" with the state of California sufficient to give this Court general jurisdiction over it. Furthermore, two

3

such contacts include activities by Leica directed not only at this judicial district, but towards AntiCancer itself, sufficient for this Court to exercise specific jurisdiction as well.

First, Exhibit 1 to the Valenti Declaration is an answer filed by Leica in the Northern District of California in 2002.  In it, Leica explicitly states "Defendant Leica Microsystems, Inc. answers the Complaint for Damages as follows . . . 5. Defendant admits that it was and is doing business in California." Ex. 2 to Valenti Dec., pp. 1-2.

Second, the FAC attached as Exhibit 1 to the Valenti Declaration details numerous and significant contacts Leica has with the state of California, including activities specifically directed towards this judicial district and which relate directly to the claims at issue in this case:

> 8. Leica has specifically and purposefully directed its activities with respect to its products and AntiCancer″s inventions into this judicial district by promoting its products to third parties within this district and by participating in and sponsoring one or more national tradeshows held in this judicial district, including sponsoring the "Leica Scientific Forum San Diego" regarding "Pushing the Envelope of Biological Imaging," in which the key speaker discussed matters directly pertaining to AntiCancer″s patented methods. Leica USA is also licensed by Mauna Kea Technologies, a French company, to sell its "CellVizio" imaging device under Leica″s brand name as the "Leica FCM1000." Mauna Kea Technologies is the plaintiff and counterdefendant in the related case of *Mauna Kea Technologies v. AntiCancer, Inc.,* Case No. 11cv1407 AJB (JMA), currently pending before this court. (The Leica FCM1000 has also been used by one or more Leica customers to practice the methods of one or more of the patents-in-suit, as detailed more fully below.)

> 9. In addition, Leica has specifically and purposefully directed its activities at residents of this judicial district by, on information and belief, obtaining at least two documents from AntiCancer's website which it has used to market its products and to induce and or contribute to its customers' use of AntiCancer's patented methods with Leica products. Attached hereto and incorporated herein as Exhibit 1 is a true and correct copy of a paper published by AntiCancer scientists entitled "Whole-body optical imaging of green fluorescent protein-expressing tumors and metastases" which was downloaded from Leica's website at http://www.e-leica.com/pdfs.nsf/(ALLIDs)/44EFFEFFE6B0B34480256C41003F2C23/$FILE/-whole_body_gfp.pdf. The paper describes imaging methods performed by AntiCancer scientists using, among other things, a Leica device. The methods described in the paper are directly related to the methods described in the patent-in-suit of this case. In addition, attached hereto and incorporated herein as Exhibit 2 is a true and correct copy of a list of fluorescent tumor models offered by AntiCancer which was also downloaded from Leica's website at http://www.e-leica.com/pdfs.nsf/(ALLIDs)/490AD09F59B7348880256C41003E9EA0/$FILE/-

gfp_tumor_models.pdf. These fluorescent tumor models are also directly related to the methods of the patents-in-suit and can be used to practice those methods with, among other devices, the Leica instruments alleged herein.

10. Leica has also specifically and purposefully directed its activities to this judicial district by marketing its infringing "TCS STED CW" instrument in San Diego. A Leica press release states that the "new superresolution system Leica TCS STED CW made its successful debut in December 2009 at the 49th annual meeting of the American Society for Cell Biology in San Diego. A large number of highly interested scientists who followed the product demonstrations were convinced by the progressive technology with its potential to revolutionize life science research."

11. The Leica press release goes on to state that the "Leica TCS STED CW combines the high-end confocal Leica TCS SP5 with purely optical and patented superresolution technology . . . ." On information and belief, this indicates that the TCS STED CW is a newer model of the Leica TCS SP5, which in turn is a newer model of the Leica TCS SP2 and its related model, the TCS SP2-AOBS. The Leica TCS SP2-AOBS has been used by Leica customers to practice the methods of one or more of the patent-in-suit, as described more fully below.

12. On information and belief, at least two units of the Leica M165FC (the subject of infringement allegations below) were purchased by the Sanford Burnham Medical Research Institute in La Jolla, California, and are currently in use there.

13. On information and belief, a Leica MZ16 FA, a Leica DC500 digital CCD camera, and a Leica MZFL3 Stereomicroscope (all of which are the subjects of infringement allegations below) were used by researchers at the University of California, San Diego and/or the San Diego-based biotech Genelux Corporation.

FAC, Exhibit 1 to Valenti Dec., pp. 4-6.

Taken together, these facts support both general and specific jurisdiction over Leica.

**C.    Venue is Proper in This District.**

As noted in Leica's brief in support of its motion, in order to determine if venue is proper, the Court must treat the Southern District of California as a separate state and determine whether Leica is subject to personal jurisdiction based solely on its contacts within the Southern District.

As detailed above, Leica has significant business contacts within San Diego alone sufficient for this Court to exercise personal jurisdiction over it.  Leica has attended trade shows and hosted numerous "scientific forums" in San Diego, many of which relate directly to the claims at issue in this case.  For example, Leica promoted the debut of its TCS STED instrument at a 2009 conference in San

5

Diego and asserted that "A large number of highly interested scientists who followed the product demonstrations were convinced by the progressive technology with its potential to revolutionize life science research." FAC, Exhibit 1 to Valenti Dec., pp. 6. The TCS STED instrument is closely related to other Leica instruments which are directly related to the claims in this case since they were used to infringe AntiCancer's patents.

In addition, a "LinkedIn" profile page describes an individual named Bob Cowden as an "Imaging Specialist at Leica-Microsystems" in the "Greater San Diego Area." Exhibit 3 to the Valenti Dec. This is clear evidence that Leica maintains a regular and established place of business in San Diego, particularly for business activities ("Imaging Specialist") related to the claims in this case.

Above all, venue is proper in the Southern District because Leica's activities within San Diego are sufficient for this Court to exercise specific jurisdiction over it. Leica has reached into this judicial district to obtain documents and images from AntiCancer's website which it then posted on its own website, as detailed above and in paragraph 9 of the FAC. Those documents and images relate directly to the patent-in-suit, and also, as detailed further below, provide evidence of Leica's indirect infringement of the patents-in-suit. Further, AntiCancer's FAC includes additional evidence of acts of indirect infringement of the patents-in-suit committed by Leica through its customers in this judicial district:

> 23. A paper titled "Functional hyper-IL-6 from vaccine virus-colonized tumors triggers platelet formations and helps alleviate toxicity of mitomycin C enhanced virus therapy" published in 2012 by scientists from, among other places, the **University of California, San Diego, and Genelux Corporation, a San Diego biotech**, describes obtaining non-invasive images of GFP-expressing tumors in mice tails using the Leica MZ16 FA equipped with a Leica DC500 digital CCD camera.

> 24. A paper titled "Real-time intraoperative detection of melanoma lymph node metastases using recombinant vaccine virus GLV-1h68 in an immunocompetent animal model" published in 2009 by scientists from, among other places, Memorial Sloan-Kettering Cancer Center in New York, NY and **Genelux Corporation in San Diego**, describes obtaining non-invasive images of GFP-expressing tumors using a Leica MZFL3 Stereomicroscope.

FAC, Exhibit 1 to Valenti Dec., pp. 8-9, emphasis added in boldface portions.

In sum, there is more than sufficient evidence to establish general and specific jurisdiction over Leica solely based on its contacts and activities within San Diego, making venue in the Southern District proper.

### D.    AntiCancer's First Amended Complaint Amply States a Claim for Indirect Infringement.

The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Under the pleading requirements of Rule 8, the Court must determine whether the Complaint contains "sufficient factual matter" that, taken as true, "state a claim for relief is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal citation and quotation marks omitted).  Only pleaded facts, as opposed to legal conclusions, are entitled to assumption of the truth.  *Id.* at 1949-50.

If the Complaint does contain such supporting factual allegations, the Court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.  *Id.* at 1950.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1949.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*  This review requires context-specific analysis involving the Court's "judicial experience and common sense." *Id.* at 1950.

AntiCancer's FAC alleges numerous facts regarding Leica's knowing and purposeful inducement of infringement and contributory infringement.  These include the aforementioned documents which Leica obtained from AntiCancer's website and put on its own – documents that specifically teach the methods of the patents-in-suit.  Additional evidence of Leica's knowing and intentional inducement and contributory infringement, as detailed in the FAC, include:

PLAINTIFF ANTICANCER, INC.'S <u>OPPOSITION</u> TO DEFENDANT'S MOTION TO DISMISS

25. In 2008 Leica issued a press release promoting, among other instruments, the M165 FC, the TCS SP5, and the FCM1000 endoscopic microscope (all referred to above). Describing the FCM1000, the press release states the following:

> **Smallest fiber-optic confocal microscope for endoscopic in vivo microscopy**
> The endoscopic confocal microscope Leica FCM1000 enables <u>non-invasive real time examinations to be conducted on living animals</u>. High-speed recordings can be made of cellular or vascular processes simply by bringing the flexible and minimally invasive micro probe in contact with tissue of interest. This new method allows repeat measurements as well as follow-up analysis of living processes on the same animal. The innovative fiber-optic confocal fluorescence microscope Leica FCM1000 was developed by Leica Microsystems" partnering company Mauna Kea Technologies in Paris and is <u>fully adapted to *in vivo* and *in situ* small animal imaging</u>.

(Emphasis added in underlined portions.)

26. Leica's website published a promotional article titled "Fluorescence in Microscopy" in or around April 2011. The article discusses various methods of imaging proteins of interest, including by "tagging with fluorescent proteins" and includes a very prominently displayed image captioned as a "Transgenic Mouse Embryo, GFP."

27. Leica's website published a promotional article titled "An Introduction In Fluorescence" in or around May 2011. The article discusses "fluorescence as a tool in microscopy" and states the following:

> Fluorescence microscopy also allows time lapse imaging of living cells or tissue. <u>For this purpose proteins of interest can be tagged with genetically encoded fluorescing molecules like GFP (green fluorescing protein)</u>. Molecules of interest (e.g. $Ca2+$) can also be tagged using reversibly binding synthetic dyes (e.g. fura-2) or genetically modified naturally occurring proteins (e.g. GFP-derivates).
> (Emphasis added in underlined portions.)

28. A promotional brochure published by Leica in 2007 includes an article written by Anja Schue, "Leica P.R. Editor." The article describes the "new research standard" of using GFP as a way to make target proteins visible to imaging devices such as those produced by Leica. The article states that "GFP [is] ideal for in-vivo studies of biological processes." It goes on to state the following:

> The use of [G]FP is now standard in biological and medical research, <u>for example when studying gene expression</u>. It is now possible to create proteins related to GFP that fluoresce in other colors such as yellow, blue or red. Various parts of the cell and interactions between proteins can be investigated using a variety of fluorescent markers.

**PLAINTIFF ANTICANCER, INC.'S <u>OPPOSITION</u> TO DEFENDANT'S MOTION TO DISMISS**

(Emphasis added in underlined portions). On the same page, Leica advertises a promotion for one of its products capable of studying gene expression using GFP, stating:

> Purchase a completely configured inverted research microscope with fluorescence (DMI4000 B model) and receive a FREE Leica EL6000 fluorescence illuminator (>$5,000 value)!

29. A brochure for the Leica DMI4000 B model referenced above includes a picture of the device with an adjacent computer screen displaying what appears to be the exact image of a "Transgenic Mouse Embryo, GFP" referenced above, indicating that the device produced the image.

30. A brochure for the Leica MZ16 FA referenced above contains prominent images of GFP-expressing zebrafish embryos. The brochure quotes a self-described "cancer researcher" implying that he has used the Leica MZ16 FA device in his research. It also includes the following statement:

> <u>Mice</u>, frogs, zebrafish, and fruit flies <u>serve as representatives to investigate the developmental biology of humans and their illnesses in the form of a model</u>. At the center of the interest are indicator areas such as heart/circulation, blood vessels, nerves, as well as bone and cartilage formation. In research labs, millions of gene-treated model organisms are examined in different stages of their life cycle for mutated phenotypes. <u>For this purpose, fluorescence microscopy has established itself as the most effective method for examining, identifying, sorting, screening and selecting. For all of these tasks, the new Leica MZ16 F and MZ16 FA from Leica Microsystems are the best fluorescence stereomicroscopes.</u>

(Emphasis added in underlined portions.)

FAC, Exhibit 1 to Valenti Dec., pp. 9-11.

This evidence, and other evidence described in the FAC, demonstrates a facially plausible claim that Leica: has extensive knowledge of AntiCancer's patented technology; monitors its customers' use of its instruments; knows in detail the facts related to its customers' practice of the methods of the patents-in-suit; and knowingly intends to encourage and assist its customers to practice such methods.  In short, AntiCancer has alleged sufficient evidence to plausibly state its claim for indirect infringement.

//

//

PLAINTIFF ANTICANCER, INC.'S <u>OPPOSITION</u> TO DEFENDANT'S MOTION TO DISMISS

1

### E.     In the Alternative, AntiCancer Should Be Granted Leave to Amend.

2

3        Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court

4 determines that the allegation of other facts consistent with the challenged pleading could not possibly

5 cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.,* 957 F.2d 655, 658 (9th Cir. 1992).  Only

6 where leave to amend would be futile may the Court deny leave to amend.  *Id*. at 658.  This is not such

7 a situation.  As AntiCancer's proposed First Amended Complaint demonstrates, amendment would not

8 be futile.

9 ## III.     CONCLUSION.

10       For all of the above stated reasons, the Court should deny defendant's motion, or, in the

11 alternative, grant AntiCancer leave to file its First Amended Complaint.

12

13                                            Respectfully submitted,

14

15                                            ANTICANCER, INC.

16

17 DATED:        February 10, 2012           By: ___/s/ *Matt Valenti*_____
                                                  MATT VALENTI
18                                             Attorney for Plaintiff AntiCancer, Inc.

19

20

21

22

23

24

25

26

27

28

**PLAINTIFF ANTICANCER, INC.'S <u>OPPOSITION</u> TO DEFENDANT'S MOTION TO DISMISS**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that, on February 10, 2012, the foregoing document entitled **PLAINTIFF ANTICANCER, INC.'S** <u>**OPPOSITION**</u> **TO DEFENDANT'S MOTION TO DISMISS** was filed via the Case Management/Electronic Case Filing (CM/ECF) system, with service to be made on all parties via the automated generation and e-mailing of a Notice of Electronic Filing (NEF) by the CM/ECF system.

February 10, 2012                    By:   <u>*/s/ Matt Valenti*</u>

MATT VALENTI

Attorney for Plaintiff AntiCancer, Inc.

PLAINTIFF ANTICANCER, INC.'S <u>OPPOSITION</u> TO DEFENDANT'S MOTION TO DISMISS