DAVID G. MANGUM (*pro hac vice*)
C. KEVIN SPEIRS (*pro hac vice*)
ecf@parsonsbehle.com
PARSONS BEHLE & LATIMER
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone:     (801) 532-1234
Facsimile:     (801) 536-6111

JOHN N. ZARIAN (SBN 145080)
DANA M. HERBERHOLZ (*pro hac vice*)
jzarian@parsonsbehle.com
dherberholz@parsonsbehle.com
PARSONS BEHLE & LATIMER
960 Broadway Avenue, Suite 250
Boise, Idaho 83706
Telephone:     (208) 562-4900
Facsimile:     (208) 562-4901

YOUNG & THOMPSON
Douglas V. Rigler (*pro hac vice*)
drigler@young-thompson.com
Jeffrey M. Goehring, 233002
jgoehring@young-thompson.com
209 Madison Street, Suite 500
Alexandria, Virginia 22314
Telephone:     (703) 521-2297
Facsimile:     (703) 685-0573

Attorneys for Defendant
  LEICA MICROSYSTEMS, INC.

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTICANCER, INC.,<br><br>           Plaintiff,<br><br>      v.<br><br>LEICA MICROSYSTEMS, INC. and DOES 1-10, inclusive,<br><br>           Defendants. | Civil Action No. 3:11-cv-02756-DMS-JMA<br><br>*The Honorable Dana M. Sabraw*<br>*Courtroom 13A*<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>**Date:  June 21, 2013**<br>**Time:  1:30 p.m.** |

**TABLE OF CONTENTS**

I.      INTRODUCTION.................................................................................................1

II.     BACKGROUND AND PROCEDURAL HISTORY ........................................3

        A.      The Complaints and Motions to Dismiss .............................................3

        B.      Bifurcation of Discovery......................................................................5

        C.      The AntiCancer Patents........................................................................6

III.    STATEMENT OF UNDISPUTED FACTS ....................................................7

IV.     LEGAL STANDARDS....................................................................................9

        A.      Summary Judgment Standard Under Fed. R. Civ. P. 56......................9

        B.      Standard For Actively Inducing Infringement Under 35 U.S.C. § 271(b)...........10

V.      ARGUMENT .................................................................................................11

        A.      AntiCancer Adduced No Evidence That Any Third Party Directly
                Infringed the AntiCancer Patents. ......................................................11

        B.      AntiCancer Adduced No Evidence That Leica Knowingly Induced Third
                Parties to Infringe the AntiCancer Patents. ........................................14

                1.      AntiCancer Cannot Meet Its Burden of Proof at the Close of Phase
                        I Fact Discovery. .....................................................................14

                2.      Leica's Promotional Materials and AntiCancer's Publications Are
                        Not Evidence That Leica Actively Induced Infringement. ......15

                3.      Leica's Products Have A Wide Variety Of Uses. ...................18

                4.      AntiCancer's Pre-2006 "Evidence" Of Inducement Is Irrelevant...........20

                5.      Courts, Including This Court, Have Rejected Similar Attempts By
                        AntiCancer To Prove Inducement..........................................21

VI.     THIS CASE SHOULD BE DECLARED EXCEPTIONAL AND THE COST OF
        THIS SUMMARY JUDGMENT MOTION SHIFTED TO ANTICANCER. ...............22

VII.    CONCLUSION ..............................................................................................24

**TABLE OF AUTHORITIES**

**CASES**

*Acco Brands, Inc. v. ABA Locks Mfr.*, 501 F.3d 1307 (Fed. Cir. 2007) ................................. 16, 17

*Akamai Techs., Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301 (Fed. Cir. 2012)
    (en banc) ...................................................................................................... 14, 19

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ................................................. 13

*AntiCancer, Inc. v. Berthold Technologies, U.S.A., LLC*, 3:11-CV-457, 2013 WL
    625363 (E.D. Tenn. Feb. 20, 2013) ................................................................ 24, 25

*AntiCancer, Inc. v. Fujifilm Med. Sys. U.S.A., Inc.*, 09-CV-1311-GPC JMA, 2013
    WL 947397 (S.D. Cal. Mar. 12, 2013) ...................................................... 12, 13, 24, 25

*Avirgan v. Hull*, 932 F.2d 1572 (11th Cir. 1991) ...................................................... 26

*Bahn v. NME Hosp., Inc.*, 929 F.2d 1404 (9th Cir. 1991) ............................................. 13

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ................................................... 12, 13

*DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293 (Fed. Cir. 2006) (en banc) ............... 13, 14, 18

*Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263 (Fed. Cir. 2004) ............... 17, 23

*E-Pass Technologies, Inc. v. 3Com Corp.*, 473 F.3d 1213 (Fed. Cir. 2007) ............. 13, 15, 17, 19

*F.D. Rich Co., Inc. v. U.S. for Use of Indus. Lumber Co., Inc.*, 417 U.S. 116
    (1974) ............................................................................................................ 25

*Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S.Ct. 2060 (2011) ..................................... 14, 17

*Informatica Corp. v. Bus. Objects Data Integration, Inc.*, C 02-3378 JSW, 2006
    WL 2917580 (N.D. Cal. Oct. 11, 2006) ....................................................... 13

*Lahiri v. Universal Music & Video Distribution Corp.*, 606 F.3d 1216
    (9th Cir. 2010) ............................................................................................... 26

*Lucent Technologies Inc. v. Gateway, Inc.*, 509 F. Supp. 2d 912 (S.D. Cal. 2007) .................... 18

*Lucent Technologies, Inc. v. Gateway, Inc.*, 543 F.3d 710 (Fed. Cir. 2008) .................. 13, 14

*MarcTec v. Johnson & Johnson*, 664 F.3d 907 (Fed. Cir. 2012) .......................................... 26

*Mirror Worlds, LLC v. Apple Inc.*, 692 F.3d 1351 (Fed. Cir. 2012) ................................... 15, 21

*Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261 (Fed. Cir. 1986) ...................... 21, 22

*NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282 (Fed. Cir. 2005) ..................................... 14

*Phonometrics, Inc. v. Westin Hotel Co*, 350 F.3d 1242 (Fed. Cir. 2003) ..............................25, 26

*Ricoh Co., Ltd. v. Quanta Computer Inc.*, 550 F.3d 1325 (Fed. Cir. 2008).................................23

*Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.*, 549 F.3d 1381 (Fed. Cir. 2008).......................26

*Vita-Mix Corp. v. Basic Holding, Inc.*, 582 F.3d 1317 (Fed. Cir. 2009).........................21, 22, 23

### <u>STATUTES</u>

28 U.S.C. § 1927 ...................................................................................................................25

35 U.S.C. § 285 .....................................................................................................................25

### <u>RULES</u>

Fed. R. Civ. P. 56(c)...............................................................................................................12

Fed. R. Civ. P. 11 ..................................................................................................................26

1         Pursuant to Federal Rule of Civil Procedure 56 and as directed in the Court's Phase I

2   Scheduling Order (Dkt. 43), Defendant Leica Microsystems, Inc. ("Leica") submits this

3   Memorandum of Points and Authorities in Support of its Motion for Summary Judgment of Non-

4   Infringement of U.S. Patent No. 6,759,038, U.S. Patent No. 6,251,384, and U.S. Patent No.

5   6,649,159.  At the close of Phase I Fact Discovery, Plaintiff AntiCancer, Inc. ("AntiCancer") has

6   failed to adduce evidence sufficient to satisfy its burden of proof on its sole claim for induced

7   infringement.  Therefore, the Court should enter summary judgment of non-infringement in favor

8   of Leica and dismiss AntiCancer's Second Amended Complaint (Dkt. 27) with prejudice.

9   **I.      INTRODUCTION**

10        Recognizing AntiCancer's heavy burden to prove a claim of induced infringement, and

11  recognizing the efficiency of a dedicated discovery period focused on the elements of that claim,

12  the parties jointly proposed and the Court adopted a phased discovery plan that gave AntiCancer

13  until April 15, 2013 to complete all fact discovery pertaining to direct infringement by Leica's

14  customers and active inducement of any such infringement by Leica.  Scheduling Order – Phase

15  I (Dkt. 43).  Despite having agreed to and joined in proposing such a Scheduling Order, and

16  despite acknowledging that Leica fully complied with its obligations under the Order and

17  produced all of the required documents, AntiCancer failed to propound a single written discovery

18  request or take a single deposition during the prescribed fact discovery period.  Now, after the

19  close of fact discovery, AntiCancer has no evidence to meet either element of its heavy burden of

20  proof (1) that any Leica customer has directly infringed any AntiCancer patent claim, or (2) that

21  Leica actively induced such infringement.

22        First, AntiCancer cannot meet the required showing that any of Leica's customers

23  directly infringed AntiCancer's patents.  It is undisputed that the accused Leica imaging devices

24  are general-purpose machines capable of a wide variety of uses, and AntiCancer cannot point to

25  a single instance where Leica customers used a Leica device in an infringing manner.

26  AntiCancer declined to take any discovery and apparently intends to rely solely on circumstantial

27  evidence to prove direct infringement.  But circumstantial "evidence" is no substitute for actual

28  evidence, especially after AntiCancer was given a nearly five-month period to adduce such

evidence.  Because AntiCancer has failed to show evidence of actual infringement, and because AntiCancer's circumstantial evidence is far too speculative, AntiCancer cannot meet its burden of proof, and summary judgment should be granted in favor of Leica for this reason alone.

Second, AntiCancer cannot prove that Leica encouraged or persuaded its customers to perform the methods of the AntiCancer Patents, knowing that its conduct would cause its customers to infringe the AntiCancer Patents.  At the close of fact discovery, AntiCancer has no more "evidence" of alleged induced infringement than that alluded to in its Complaint—namely, excerpts from a handful of general Leica promotional materials and two third-party authored documents accessible on Leica's website.  While such allegations were deemed sufficient to overcome the minimal standard applied to motions to dismiss, they cannot save AntiCancer's claim at the close of fact discovery.[1]  None of these materials instruct the specific methods of AntiCancer's patents.  In addition, there is no evidence that any of Leica's customers even accessed or read these materials, let alone relied on them to perform the patented methods.  Summary judgment is independently justified as a result of this failure of proof.

This is not the first case in which AntiCancer has asserted dubious claims that a defendant actively induced others to infringe its patents.  Courts, including this one, have awarded summary judgment based on AntiCancer's failure to adduce any *actual* evidence in support of its claims.  Evidently, AntiCancer has not learned from those cases.  AntiCancer attempts to cobble together an infringement theory based entirely on circumstantial evidence and speculation when similar infringement theories failed to stand the test of summary judgment in prior cases.  AntiCancer cannot avoid summary judgment here by offering the same shopworn and unsupported theories.

AntiCancer's failure of proof is particularly egregious in this case.  Acknowledging its burden, AntiCancer requested and received a dedicated discovery period in which to pursue evidentiary support for its sole remaining induced infringement claim.  Leica agreed with, and

---

[1] The Court dismissed AntiCancer's direct and contributory infringement claims, but permitted the induced infringement claim to proceed.

1   the Court granted, this request.  Leica diligently complied with its obligations and, on an

2   expedited basis, during January 2013, produced over 8,500 separate documents totaling over

3   33,000 pages, including all of Leica's promotional materials on the identified imaging devices

4   and all of Leica's correspondence and communications with the customers identified by

5   AntiCancer.  Nonetheless, AntiCancer failed to take a single deposition, and failed to propound a

6   single follow-up discovery request.  Moreover, during a pre-scheduled Case Management

7   Conference with Magistrate Judge Adler held on March 14, 2013 (over a month and a half after

8   Leica's production and a full month prior to the fact discovery cutoff), AntiCancer's counsel

9   acknowledged the impending fact discovery cutoff and that Leica had made a full production of

10  the requested material, reported that its review of the material was proceeding on schedule, and

11  assured both the Court and Leica that it would dismiss the lawsuit if it did not uncover additional

12  proof to support the induced infringement claim.  Despite this commitment, AntiCancer has now

13  put Leica to the expense, and the Court to the trouble, of dealing with an unsupported claim on

14  summary judgment.  As a result, summary judgment should not only be granted, but Leica

15  should also be awarded its fees incurred in pursuing this motion.

16  **II.       BACKGROUND AND PROCEDURAL HISTORY**

17          **A.       <u>The Complaints and Motions to Dismiss</u>**

18          AntiCancer filed this patent infringement suit against Leica in November 2011, alleging

19  infringement of U.S. Patent No. 6,649,159 ("the '159 Patent").  (Complaint (Dkt. 1).)  Leica

20  moved to dismiss the complaint on various grounds, including failure to state a claim.  (Motion

21  to Dismiss and Notice of Motion (Dkt. 6).)  AntiCancer responded by filing a Motion for Leave

22  to File Amended Complaint (Dkt. 10), and filed its First Amended Complaint (Dkt. 20) on

23  March 12, 2012, asserting three separate claims.  Like the only claim in the original complaint,

24  the first claim alleged that Leica directly infringed the '159 Patent and actively induced, and

25  contributed to, the infringement of that patent by others.  For the second and third claims,

26  AntiCancer respectively alleged that Leica directly infringed, and actively induced and

27  contributed to the infringement by others of, U.S. Patent No. 6,251,384 ("the '384 Patent") and

28

1    U.S. Patent No. 6,759,038 ("the '038 Patent").  (The '159 Patent, '384 Patent, and '038 Patent

2    are collectively referenced as the "AntiCancer Patents.")

3         In March 2012, Leica filed its Motion to Dismiss the First Amended Complaint (Dkt. 21),

4    demonstrating that AntiCancer failed to state claims for direct infringement, inducement of

5    infringement, and contributory infringement.  (*See* Memorandum of Points and Authorities in

6    Support of Motion to Dismiss First Amended Complaint (Dkt. 21-1).)  The Court granted Leica's

7    Motion to Dismiss in its entirety, holding that AntiCancer failed to state a claim for direct

8    infringement, contributory infringement, or actively inducing infringement.  (Order Granting

9    Defendant's Motion to Dismiss (Dkt. 26) ("Order").)  The Court concluded that AntiCancer's

10   claims for inducing infringement were deficient as a matter of law for at least two reasons.

11        First, the Court held that AntiCancer "failed to identify the third parties that allegedly are

12   infringing" the AntiCancer Patents.  (Order at 4.)  Although the First Amended Complaint

13   referenced a number of papers published by scientists from various institutions and universities,

14   these references were held insufficient to identify a third party direct infringer because "nowhere

15   [did] Plaintiff allege that these entities have infringed the patents-at-issue."  (*Id.*)  In discussing

16   the same issue in relation to contributory infringement, the Court further stated that "Plaintiff

17   fails to allege any facts to show that Defendant, or any other person or entity, has infringed any

18   of the patents-at-issue."  (*Id.* at 5-6.)

19        Second, the Court held that "Plaintiff fail[ed] to allege any facts to support the intent

20   elements of a claim of inducing infringement."  (*Id.* at 4.)  The Court granted AntiCancer leave

21   to amend, but "cautioned [AntiCancer] that if its Second Amended Complaint does not cure

22   these deficiencies, its claims will be dismissed with prejudice."  (*Id.* at 6.)

23        AntiCancer filed a Second Amended Complaint (Dkt. 27) on May 21, 2012.  AntiCancer

24   dropped its claims of direct infringement and contributory infringement, asserting only claims

25   for inducing infringement.  The Second Amended Complaint includes a section titled "Direct

26   Infringement by Leica Customers" that references the same papers published by scientists from

27   various institutions and universities that the First Amended Complaint identified.  (SAC ¶¶ 18-

28   24.)  According to AntiCancer, these institutions are Leica customers and used a Leica imaging

1   device to perform the methods of the AntiCancer Patents.  (*Id.*)  None of these articles refer to

2   the AntiCancer Patents by name or by substance, however, and none refer to third parties

3   performing each step of even one of the specific methods claimed in those patents.  (*Id.*)

4     The Second Amended Complaint also includes a section titled "Evidence of Inducement

5   by Leica" that references various Leica marketing materials.  (SAC ¶¶ 25-32.) The Leica

6   promotional materials mentioned in that section indicate only that Leica markets and sells

7   imaging products, and that those devices have a wide range of applications and uses.  (*See* SAC

8   ¶¶ 25-31.)  None of the promotional materials refer to the AntiCancer Patents by name or by

9   substance, and none include instructions on how to use Leica's imaging devices, let alone how to

10  use those devices to perform the specific methods claimed in the AntiCancer Patents. (*Id.*)

11    **B.** **Bifurcation of Discovery**

12    At the recommendation of the parties, and in the interest of avoiding the high costs of

13  (potentially unnecessary) claim construction and plenary discovery, the Court bifurcated

14  discovery into two phases.  (Scheduling Order (Dkt. 43).)  The Court suspended claim

15  construction discovery and the deadlines of the Patent Local Rules for "Phase I" to provide

16  AntiCancer with the opportunity to take discovery in support of its inducement claims:

17  Discovery during Phase I of the case shall be limited to adducing testimony and
    evidence from Leica and third parties concerning direct infringement of the
18  patents-in-suit by third parties and the identities and acts of those third parties that
    allegedly directly infringed the patents-in-suit, and whether Leica instructed,
19  aided or induced nonparties to directly infringe the patents-in-suit.

20  (*Id*. at 1-2.)  The Scheduling Order provides that, at the conclusion of Phase I, Leica may file a

21  motion for summary judgment if Leica and AntiCancer are unable to resolve their disputes.  (*Id.*

22  at ¶ 6.)  In the alternative, if Leica elected not to file a motion for summary judgment, or if the

23  summary judgment motion is denied, the Scheduling Order provides that the Court "will issue a

24  schedule for Phase II of this case, including the dates and deadlines set forth in the Patent Local

25  Rules, on an accelerated basis."  (*Id*.)

26    On November 30, 2012, as required by the Phase I Scheduling Order, AntiCancer served

27  a document identifying the Leica customers that allegedly infringed the AntiCancer Patents.

1    (Declaration of David G. Mangum ¶ 4 & Exh. 1, "Phase I Disclosure".)   AntiCancer also

2    identified the imaging devices that the third-party customers allegedly used to infringe the

3    AntiCancer Patents.  (*Id.*)

4         In response, Leica fulfilled its Phase I discovery obligations by producing more than

5    8,500 documents totaling more than 33,000 pages.  (Mangum Decl. ¶ 5.) These documents

6    included Leica's communications with the third-party customers identified by AntiCancer

7    relating to the identified imaging devices.   Leica's document production also included

8    advertisements and other marketing materials for the identified imaging devices.  (*Id.*)

9         AntiCancer took no additional discovery, and the deadline to complete Phase I discovery

10   ended on April 15, 2013.  (Scheduling Order at ¶ 5.)  AntiCancer served no discovery requests

11   on Leica or on any of Leica's customers, and declined to take a single deposition.  (Mangum

12   Decl. ¶¶ 6, 8.) AntiCancer was fully apprised of its obligations to adduce evidence supporting its

13   induced infringement claim by the April 15, 2013 deadline and knew that summary judgment

14   would result if it failed to meet that burden.  Indeed, AntiCancer jointly requested the schedule

15   and procedure adopted in the Phase I Scheduling Order.   Moreover, in a Case Management

16   Conference held before Magistrate Judge Adler on March 14, 2013, AntiCancer's counsel

17   acknowledged the impending fact discovery cutoff, and assured the Court and Leica that it would

18   dismiss the lawsuit if it did not uncover additional proof to support the induced infringement

19   claim.  (*Id.* at ¶ 7.)  AntiCancer has now gone back on that commitment, necessitating this

20   motion.

21        **C.   The AntiCancer Patents**

22        The three AntiCancer Patents clam very specific, multi-step methods of using green

23   fluorescent protein ("GFP") in various laboratory settings.  In two patents, these methods include

24   using GFP to "evaluate a candidate protocol or drug for the inhibition of metastasis of a primary

25   tumor." (SAC (Dkt. 27), Exh. 5, '384 Patent claim 1, col. 13, ln. 55 – col. 14, ln. 25; SAC (Dkt.

26   27), Exh. 4, '038 Patent claim 1, col. 13, ln. 57 – col. 14, ln. 19.)  The third patent claims

27   specific, multi-step methods of "monitor[ing] the ability of a promoter to promote expression in

28

1   an animal of an endogenous gene" by observing fluorescence using "whole-body external

2   fluorescent optical imaging." (SAC (Dkt. 27), Exh. 3, '159 Patent claim 1, col. 24, lns. 44-60.)

3       A detailed discussion of the AntiCancer Patents is not necessary, but even a cursory

4   review shows that AntiCancer's alleged "evidence" of infringement is woefully deficient and

5   falls far short of demonstrating that third parties performed any of the specific methods of the

6   AntiCancer Patents.   Moreover, AntiCancer likewise falls short of demonstrating that Leica

7   actively and knowingly induced the performance of those specific methods.

8   **III.   STATEMENT OF UNDISPUTED FACTS**

9       **The AntiCancer Patents**

10       1.    AntiCancer alleges that Leica actively induced third parties to infringe each of the

11   following three patents: (1) U.S. Patent No. 6,251,384 (the "'384 Patent"); (2) U.S. Patent No.

12   6,759,038 (the "'038 Patent"); and (3) U.S. Patent No. 6,649,159 (the "'159 Patent").  (SAC ¶¶

13   37, 43, 49.)

14       2.    AntiCancer first notified Leica Microsystems GmbH, a German corporation and a

15   distinct corporation from Leica Microsystems, Inc., of the existence of the AntiCancer Patents in

16   January 2006.  (SAC ¶ 33; Amended Answer to SAC ¶ 33.)

17       **AntiCancer's Lack of Evidence of Third-Party Direct Infringement**

18       3.    AntiCancer alleges that the following research institutions (collectively, the

19   "Research Institutions") used a Leica device to directly infringe "one or more claims" of the

20   AntiCancer Patents:  (1) Sloan-Kettering Institute; (2) Cornell University; (3) the University of

21   Miami; (4) the University of Southern California; (5) the University of Minnesota; (6) the

22   University of North Carolina, Chapel Hill; (7) the University of Pennsylvania School of

23   Medicine; (8) the University of California San Diego; (9) Genelux Corporation; (10) Memorial

24   Sloan-Kettering Cancer Center; (11) La Jolla Institute for Allergy and Immunology; (12) Scripps

25   Research Institute; and (13) Genentech.   (SAC ¶¶ 18-24; Phase I Disclosure ¶¶ 1-13.)

26       4.    AntiCancer alleges that the Research Institutions used one of the following six

27   Leica devices to directly infringe "one or more claims" of the AntiCancer Patents: (1) Leica TCS

28   SP2 AOBS;   (2) Leica M165 FC; (3) Leica MZFL III; (4) Leica FCM1000; (5) MZ16 FA

1  equipped with a Leica DC500 digital CCD camera; and (6) Leica SP5.  (SAC ¶¶ 18-24; Phase I

2  Disclosure ¶¶ 1-13.)

3      5.      AntiCancer's Second Amended Complaint references seven articles authored by

4  scientists, including scientists at the Research Institutions, as evidence that the Research

5  Institutions "directly infringed one or more of the claims" of the AntiCancer Patents.  The

6  Second Amended Complaint provides no discussion of how the articles show infringement (SAC

7  ¶¶ 18-24), nor do the articles themselves reflect performance of all of the steps of any claim of

8  the AntiCancer Patents.  True and correct copies of these articles are attached as Exhibits 3-9 to

9  the Declaration of David G. Mangum.

10     6.      Despite having requested and being provided with a dedicated fact discovery

11 period for "adducing testimony and evidence from Leica … and third parties concerning direct

12 infringement of the patents-in-suit by third parties and the identities and acts of those third

13 parties that allegedly directly infringed the patents-in-suit," AntiCancer took no discovery in this

14 case despite receiving the documents Leica produced as part of the Court's Phase I Scheduling

15 Order.  AntiCancer did not serve any written discovery requests on the Research Institutions, nor

16 did it depose the Research Institutions or any individual associated with the Research

17 Institutions.  (Mangum Decl. ¶¶ 6, 8.)

18      **AntiCancer's Lack of Evidence of Actively Inducing Infringement**

19     7.      AntiCancer's Second Amended Complaint baldly alleges that various Leica press

20 releases and promotional materials "induced Leica's customers to practice one or more claims"

21 of the AntiCancer Patents.   Again, however, the Second Amended Complaint provides no

22 discussion of how those materials allegedly induce practice of the very specific claims in the

23 AntiCancer Patents.   (SAC ¶¶ 25-31.) True and correct copies of these press releases and

24 promotional materials are attached as Exhibits 10-16 to the Declaration of David G. Mangum.

25     8.      AntiCancer otherwise alleges that two AntiCancer documents are accessible from

26 the Leica website, and that those documents, again without analysis or explanation, somehow act

27 "to encourage and induce [Leica's] customers to use Leica products to infringe one or more

28

1  claims" of the AntiCancer Patents.  (SAC ¶ 32.)  True and correct copies of these documents are

2  attached as Exhibits 17-18 to the Declaration of David G. Mangum.

3        9.     Despite having requested and being provided with a dedicated discovery period

4  for "adducing testimony and evidence from Leica … and third parties concerning … whether

5  Leica instructed, aided or induced nonparties to directly infringe the patents-in-suit," AntiCancer

6  took no discovery during the five-month period from the issuance of the Phase I Scheduling

7  Order.  AntiCancer sought no follow-up discovery from the more than 30,000 pages of

8  documents produced by Leica, including all of Leica's communications with the customers

9  identified by AntiCancer.  AntiCancer served no written discovery requests on Leica, nor did it

10  depose Leica or any individual associated with Leica. (Mangum Decl. ¶¶ 5, 6, 8.)

11  **Leica's Imaging Devices are Capable of a Wide Variety of Uses Unrelated to the**
**Subject Matter in the AntiCancer Patents**

12

13        10.    Leica's TCS SP2 AOBS, M165 FC, FCM1000, MZ16FA, MZFL3, and SP5

14  imaging devices have a wide variety of applications that do not require practicing the methods of

15  the AntiCancer Patents.  (Declaration of Julian F. Burke, PhD ¶¶ 4-12.)  Each device can be used

16  in many different technological areas, including life sciences, industry, biosystems, and

17  medicine.  (*Id.*)  Each device can be used for many types of applications, including for anatomy,

18  biology, botany, hydrology, forestry research, electronics, semiconductors, oils, plastics,

19  polymers, metal working, materials sciences, forensic analysis, art restoration, geology, and

20  gemology. (*Id.* )

21  **IV.**    **LEGAL STANDARDS**

22       **A.**    **Summary Judgment Standard Under Fed. R. Civ. P. 56**

23        Summary judgment is as appropriate in patent cases as in other type of case.  *See* Fed. R.

24  Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  When, as here, the moving

25  party does not bear the burden of proof at trial, summary judgment is appropriate if "there is an

26  absence of evidence to support the non-moving party's case."  *AntiCancer, Inc. v. Fujifilm Med.*

27  *Sys. U.S.A., Inc.*, 09-CV-1311-GPC JMA, 2013 WL 947397, at *4 (S.D. Cal. Mar. 12, 2013)

28  (*quoting Celotex*, 477 U.S. at 325).  The moving party need not produce evidence showing the

1  absence of a material fact, nor must it support its motion with evidence negating the non-moving

2  party's claim.  *Celotex*, 477 U.S. at 325.  If the moving party shows an absence of evidence to

3  support the non-moving party's case, the burden then shifts to the non-moving party to produce

4  "specific evidence, through affidavits or admissible discovery material to show that a dispute

5  exists."  *Bahn v. NME Hosp., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991).  The non-moving party

6  cannot avoid summary judgment by allegations alone; instead, it must provide admissible

7  evidence to support a genuine dispute about a material fact "such that a reasonable jury could

8  return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

9  1986).

10      Many courts have granted summary judgment of no inducing infringement in

11  circumstances directly analogous to those present here.  *E.g.*, *AntiCancer, Inc. v. Fujifilm Med.*

12  *Sys. U.S.A., Inc.*, 09-CV-1311-GPC JMA, 2013 WL 947397, at *9-10 (S.D. Cal. Mar. 12, 2013)

13  (summary judgment of no inducing infringement granted where AntiCancer (1) adduced no

14  evidence that defendants' customers used defendants' general-purpose imaging devices in an

15  infringing manner, and (2) adduced no evidence that defendants used marketing materials for the

16  accused imaging devices to induce infringement); *Informatica Corp. v. Bus. Objects Data*

17  *Integration, Inc.*, C 02-3378 JSW, 2006 WL 2917580, at *3 (N.D. Cal. Oct. 11, 2006) (granting

18  summary judgment of no indirect infringement where patentee failed to raise issue of fact that

19  accused infringer's customers directly infringed patent in suit).  The Federal Circuit also has

20  affirmed summary judgments of no inducing infringement in such circumstances.  *E.g.*, *E-Pass*

21  *Technologies, Inc. v. 3Com Corp.*, 473 F.3d 1213, 1222 (Fed. Cir. 2007); *Lucent Technologies,*

22  *Inc. v. Gateway, Inc.*, 543 F.3d 710, 723 (Fed. Cir. 2008).

23      **B.    Standard For Actively Inducing Infringement Under 35 U.S.C. § 271(b)**

24      To establish active inducement of infringement under 35 U.S.C. § 271(b), AntiCancer

25  must prove (i) a specific act of direct infringement, (ii) that Leica specifically intended to cause

26  the acts constituting the direct infringement, (iii) that Leica knowingly and actively aided and

27  abetted the direct infringement, and (iv) that Leica possessed specific intent to encourage the

28  direct infringement.  *See, e.g.*, *DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1304 (Fed. Cir.

2006) (en banc); *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301 (Fed. Cir. 2012) (en banc).  Mere knowledge of possible infringement is not enough.  Instead, "inducement requires evidence of culpable conduct, directed to encouraging another's infringement," *DSU Med.*, 471 F.3d at 1306, and "knowledge that the induced acts constitute patent infringement." *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S.Ct. 2060, 2068 (2011).

## V.    ARGUMENT

### A.    AntiCancer Adduced No Evidence That Any Third Party Directly Infringed the AntiCancer Patents.

There is no evidence that any Leica customer used a Leica device to infringe the AntiCancer Patents.  Without such evidence, AntiCancer's claims that Leica actively induced infringement fail as a matter of law.  *E.g. Lucent*, 543 F.3d at 723 (affirming finding of no inducement of infringement for failure of proof where patent owner failed to adduce evidence of even "one instance" of direct infringement by a customer).

To show that a Leica customer directly infringed, AntiCancer must prove that the customer performed all of the steps of the claimed methods in the required order.  *E.g., NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282, 1317-18 (Fed. Cir. 2005) ("[i]t is well established that a patent for a method or process is not infringed unless all steps or stages of the claimed process are utilized") (internal quotations omitted).  AntiCancer cannot make such a showing. None of the third-party authored articles referenced by AntiCancer show performance of all of the steps of any method claimed in the AntiCancer Patents.  And, AntiCancer failed to propound a single written discovery request to any of the Leica customers it claims directly infringed those patents, and it declined to take any of their depositions.  Accordingly, the record is devoid of any evidence that Leica's customers individually or collectively performed all of the steps of any of the specific methods of the AntiCancer Patents using Leica's devices.

The only "evidence" of direct infringement AntiCancer has identified is the handful of articles cited in the Second Amended Complaint.  (SOF ¶ 5.)  But AntiCancer cannot rely on these articles to show direct infringement because none of the articles show that third parties

1  used a Leica device to perform all of the steps of the methods of the AntiCancer Patents, least of

2  all in the required order. (*See* SOF ¶ 5; Mangum Decl., Exhs. 3-9.)

3        In *E-Pass Technologies, Inc. v. 3Com Corp.*, 473 F.3d 1213 (Fed. Cir. 2007), the Federal

4  Circuit affirmed summary judgment of no induced infringement because the plaintiff presented

5  no evidence that the patented method was ever practiced on the accused hand-held mobile

6  devices.  *Id.* at 1221-22.  Although plaintiff offered circumstantial evidence that users of the

7  accused devices performed the claimed method, the evidence failed to demonstrate that anyone

8  ***actually*** performed all of the steps of the patented method in the required order.  *Id.*

9        Similarly, in *Mirror Worlds, LLC v. Apple Inc.*, 692 F.3d 1351 (Fed. Cir. 2012), the

10  Federal Circuit rejected the patentee's attempt to prove direct infringement by relying on third-

11  party written reviews of the accused product.  *Id.* at 1361.  In affirming the district court's JMOL

12  of no inducement of infringement, the court held that the third-party reviews "did not present the

13  accused features together in an infringing manner" and were only "minimally descriptive of

14  actual use of the product."  *Id.*

15        Here, the articles referenced in paragraphs 18-24 of the Second Amended Complaint

16  indicate only that some third parties conducted research using a long list of materials and

17  equipment from various sources, including at least one Leica imaging device.  (*See* SOF ¶ 5;

18  Mangum Decl., Exhs. 3-9.)  Like the circumstantial evidence found deficient in *E-Pass* and

19  *Mirror Worlds*, the articles provide no evidence that the authors of those publications used a

20  Leica device to perform the specific methods of the AntiCancer Patents in the required order.

21  Further, the articles include only passing references to Leica's devices and are at most only

22  "minimally descriptive" of actual use of Leica's products.  *Mirror Worlds*, 692 F.3d at 1361.

23        For example, none of the articles show that third parties performed all six steps of claim 1

24  of the '384 Patent, which is directed to "[a] method to evaluate a candidate protocol or drug for

25  the inhibition of a primary tumor," or all six steps of claim 1 of the '038 Patent, which is directed

26  to a similar method of "evaluat[ing] a candidate protocol or drug for the inhibition of metastasis

27

28

of a primary tumor."[2]  (*See* Mangum Decl., Exhs. 3-9.)   None of the articles identifies third parties as performing all of the steps of the specific methods of "monitor[ing] the ability of a promoter to promote expression in an animal of an endogenous gene that is controlled by said promoter," which are required in all 13 claims of the '159 Patent.[3]  (*Id.*)

In short, none of the articles AntiCancer cites in the Second Amended Complaint suggest that Leica's customers used a Leica imaging device to perform the specific methods claimed in the AntiCancer Patents.   AntiCancer bears the burden of proving such direct infringement. Despite this readily apparent lack of proof, AntiCancer undertook no discovery to try and fill the gaping holes in AntiCancer's required proof.   The time for such discovery closed on April 15, 2013.   AntiCancer's failure of proof mandates entry of judgment as a matter of law for Leica.

AntiCancer cannot overcome its failure to prove actual infringement and avoid summary judgment by arguing that the accused Leica devices could, in theory, be used to perform the methods of the AntiCancer Patents.   Each of Leica's imaging devices can be used in many different technological areas, including in life sciences, industry, biosystems, and medicine. Each device can be used for a wide variety of applications, including for anatomy, biology, botany, hydrology, forestry research, electronics, semiconductors, oils, plastics, polymers, metal working, materials sciences, forensic analysis, art restoration, geology, and gemology.  (SOF ¶ 10.)

Accordingly, because Leica's imaging devices are undisputely capable of a wide variety of uses, the vast majority of which are not vaguely related even to the general subject matter addressed in the AntiCancer Patents, AntiCancer must provide evidence of specific instances of a third party using a Leica imaging device in an infringing manner.  *See Acco Brands, Inc. v. ABA Locks Mfr.*, 501 F.3d 1307, 1313 (Fed. Cir. 2007) (to prove direct infringement, the patentee

---

[2]   SAC (Dkt. 27), Exh. 5, '384 Patent, col. 13, ln. 55 – col. 14, ln. 25; SAC (Dkt. 27), Exh. 4, '038 Patent, col, 13, ln. 57 – col. 14, ln. 19.

[3]   SAC (Dkt. 27), Exh. 3, '159 Patent, col. 24, ln. 44 – col. 26, ln. 12.

1  must "either point to specific instances of direct infringement or show that the accused device

2  necessarily infringes the patent in suit").

3        In *Acco Brands*, the Federal Circuit reversed the district court's denial of JMOL of no

4  induced infringement where the accused device could be used in a non-infringing manner and

5  where the plaintiff presented no evidence of users operating the accused device in an infringing

6  manner.  *Id*. at 1312.  The court cautioned that "hypothetical instances of direct infringement are

7  insufficient to establish vicarious liability or indirect infringement."  *Id*. at 1313.   *See also E-*

8  *Pass*, 473 F.3d at 1222-23 (affirming summary judgment of no direct infringement and no

9  induced infringement where accused product had substantial non-infringing uses and where

10  patentee failed to show any individual acts of direct infringement); *Dynacore Holdings Corp. v.*

11  *U.S. Philips Corp*., 363 F.3d 1263, 1277-78 (Fed. Cir. 2004) (same).

12        Here, like the accused products in *Acco Brands*, *E-Pass*, and *Dynacore*, it is undisputed

13  that the accused Leica devices are general-purpose machines capable of a substantial number of

14  non-infringing uses.  (SOF ¶ 10.)  As a result, AntiCancer must offer specific evidence of a third

15  party using a Leica device in an infringing manner.  No such evidence exists; therefore, summary

16  judgment should be entered in favor of Leica.

17        **B.**   **AntiCancer Adduced No Evidence That Leica Knowingly Induced Third**
          **Parties to Infringe the AntiCancer Patents.**

18

19        Even if AntiCancer were able to show that a third party directly infringed, AntiCancer's

20  claim for actively inducing infringement still fails because AntiCancer has adduced no evidence

21  that Leica induced that infringement.

22        **1.**   **AntiCancer Cannot Meet Its Burden of Proof at the Close of Phase I Fact**
              **Discovery.**

23

24        To meet its burden, AntiCancer must show that Leica knew that its acts were inducing

25  others to infringe the AntiCancer Patents and that it "persuade[d]" others to directly infringe the

26  patents.  *See Global-Tech,* 131 S.Ct. at 2065, 2068.  Though not present here in any event, it is

27  not enough that Leica knew of the AntiCancer Patents or even knew of an infringing act (were

28  such an infringing act to have occurred).  *Id*. at 2065-68.  Instead, AntiCancer must show that

1   Leica had an "affirmative intent to cause direct infringement," and it must point to evidence of

2   culpable conduct, directed to encouraging another's infringement, not merely that [Leica] had

3   knowledge of the direct infringer's activities."  *DSU Med.*, 471 F.3d at 1306.  No such evidence

4   exists, and AntiCancer cannot meet the high burden of proving active inducement of

5   infringement.

6          AntiCancer declined to take any discovery and apparently intends to rely solely on the

7   bald assertion in the Second Amended Complaint that Leica "has known and intended that its

8   customers would directly infringe the [AntiCancer Patents] by using the Leica devices in their

9   intended manner and according to Leica USA's instructions."   (SAC ¶¶ 37, 43, 49.)   But

10  AntiCancer proffers no evidence in support of these conclusory allegations.   There is no

11  evidence to suggest that Leica persuaded others to infringe the AntiCancer Patents, and

12  AntiCancer has yet to identify any "instructions" that Leica allegedly used to induce others'

13  infringement.  The time for adducing such evidence has passed.  AntiCancer has no excuse for its

14  failure of proof and summary judgment is mandated as a result.

15         Even if AntiCancer were able to identify evidence that Leica's customers infringed its

16  patents based on some act by Leica, AntiCancer's induced infringement claim still fails because

17  AntiCancer has no evidence that Leica intended for its customers to infringe the AntiCancer

18  Patents.  *Lucent Technologies Inc. v. Gateway, Inc.*, 509 F. Supp. 2d 912, 931 (S.D. Cal. 2007)

19  (granting accused infringer's JMOL motion of no inducing infringement because "there was

20  insufficient evidence to demonstrate that Microsoft knew or should have known that its aid or

21  encouragement would cause the infringement of the '080 patent"), *aff'd,* 543 F.3d 710 (Fed. Cir.

22  2008).  Without any evidence that Leica intentionally encouraged its customers to infringe the

23  AntiCancer Patents, AntiCancer cannot meet its burden, and the Court should enter summary

24  judgment in favor of Leica.

25              **2.    Leica's Promotional Materials and AntiCancer's Publications Are Not
                        Evidence That Leica Actively Induced Infringement.**

26

27         The only "evidence" AntiCancer offers of Leica's alleged active inducement is a handful

28  of excerpts from various Leica press releases and promotional materials, as well as two

1   documents prepared by AntiCancer scientists that were available on Leica's website.   But

2   nothing in these materials suggests that Leica actively induced others to infringe the AntiCancer

3   Patents, and AntiCancer cannot avoid summary judgment by relying on these materials.

4          As a threshold matter, AntiCancer has failed to adduce any evidence that a Leica

5   customer accessed or read any of these materials, let alone relied on the materials to perform the

6   specific methods of the AntiCancer Patents.   Therefore, even if a Leica customer infringed the

7   AntiCancer Patents, AntiCancer's claim for inducement fails for lack of proof that Leica's

8   promotional materials or the AntiCancer publications accessible on Leica's website were the

9   source of the infringement. *Akamai*, 692 F.3d at 1308 ("An important limitation on the scope of

10  induced infringement is that inducement gives rise to liability only if the inducement leads to

11  actual infringement.").

12         Even if AntiCancer could point to evidence that Leica's customers read Leica's

13  promotional materials, AntiCancer's inducement claim still fails because Leica's promotional

14  materials do not instruct users of Leica's devices how to perform all of the steps of even one of

15  the methods of the AntiCancer Patents.   Thus, by themselves, Leica's promotional materials

16  provide no evidence to suggest that a third party infringed the AntiCancer Patents or that Leica

17  encouraged such infringement.  *See E-Pass,* 473 F.3d at 1222.

18         In *E-Pass*, the Federal Circuit rejected the patent owner's attempt to establish inducement

19  relying on excerpts from the defendant's product manuals.  *Id*.   The court affirmed summary

20  judgment of non-infringement and held that the patent owner could not establish inducement

21  because the product manual excerpts did not teach "all of the steps of the claimed method

22  together, much less in the required order."  *Id*.  At best, the product manual excerpts showed that

23  the defendants taught their customers each step of the claimed method "in isolation."   *Id*.

24  Nonetheless, the court held that it required "too speculative a leap to conclude that any customer

25  actually performed the claimed method" based on the manual excerpts.  *Id*.

26         Like the user manuals in *E-Pass*, the promotional materials that AntiCancer cites as

27  evidence of inducement fail to teach all of the steps of the methods of the AntiCancer Patents.

28  For example, each claim in the '384 and '038 patents is directed to a multi-step method of

1    "evaluat[ing] a candidate protocol or drug for the inhibition of metastasis of a primary tumor," or

2    "monitor[ing] metastasis of a primary tumor."  With the exception of a generic reference to

3    "tumors" in one of the promotional materials (Mangum Decl., Exh. 13 at 4), none of the

4    promotional materials even mention the term "tumor," "metastasis," or "candidate protocol," let

5    alone instruct users how to perform the multi-step methods of the AntiCancer Patents in the

6    required order.  (Mangum Decl., Exhs. 10-16.)

7          Similarly, neither of the two AntiCancer publications cited in the Second Amended

8    Complaint mention a "drug" or "candidate protocol," let alone instruct users how to perform the

9    multi-step methods of the '384 and '038 Patents in the required order.  (Mangum Decl., Exhs.

10   17-18.)  In fact, one of these publications is nothing more than a "list of fluorescent tumor

11   models" that includes no instructions for performing any method.  (*Id.*, Exh. 18.)  Notably,

12   AntiCancer cites this list only for the admittedly weak proposition that the list "***can*** be used by

13   Leica's customers to infringe."  (SAC ¶ 27.)  But AntiCancer failed to adduce any evidence that

14   a Leica customer ***actually*** used this list or used the other AntiCancer publication cited in the

15   Second Amended Complaint, let alone that such customer obtained those publications from the

16   Leica website, or used material from either publication as instructions to perform the methods of

17   the AntiCancer Patents.  Therefore, AntiCancer's attempt to rely on its own publications as

18   evidence that Leica induced others' infringement fails for lack of proof.

19         While the product manuals and AntiCancer publications include references to "green

20   fluorescent protein" or "GFP," the AntiCancer Patents do not claim rights to all applications that

21   use GFP.  To the contrary, AntiCancer's rights extend only to the specific methods claimed in

22   the AntiCancer Patents–methods that Leica's promotional materials do not teach.[4]

23

---

24   [4] AntiCancer did not discover GFP or invent the idea of using it in tumor cells or whole, live
25   animals.  As AntiCancer acknowledges, GFP is a naturally-occurring protein found in a species
     of jellyfish.  (SAC ¶ 3.)  The AntiCancer Patents disclose that GFP was already known and had
26   been used in many ways before.  *See*, *e.g.*, SAC (Dkt. 27), Exh. 3, '159 Patent at col. 2, lns. 12-
     45; SAC (Dkt. 27), Exh. 4, '038 Patent at col. 1, lns. 38 – col. 3, ln. 3; SAC (Dkt. 27), Exh. 5,
27   '384 Patent at col. 1, ln. 35 – col. 2, ln. 67.  Indeed, Shimomura discovered GFP in the early
     1960s, and GFP came into widespread use after Prasher et al. isolated, cloned, and sequenced the
28

### 3. Leica's Products Have A Wide Variety Of Uses.

AntiCancer also cannot rely on excerpts from Leica's promotional materials as evidence of induced infringement because, as described above, Leica's imaging devices have a wide variety of applications that have nothing to do with the AntiCancer Patents. *Mirror Worlds,* 692 F.3d at 1360 ("It is well settled that excerpts from user manuals as evidence of underlying direct infringement by third parties of products that can be used in a non-infringing manner are by themselves insufficient to show the predicate acts for inducement of infringement.").  Although active steps to induce another's infringement may come in the form of advertisements or instructions that describe how to perform a claimed method or use a product in an infringing manner, courts will not infer intent to induce infringement where, as in this case, it is "undisputedly possible to use the accused device as directed without ever practicing the claimed method." *Vita-Mix Corp. v. Basic Holding, Inc.*, 582 F.3d 1317, 1329 (Fed. Cir. 2009).

In *Vita-Mix*, the patent owner alleged that two sets of instructions packaged with defendant's commercial food blenders induced third parties to infringe Vita-Mix's patented method of preventing the formation of air pockets around the moving blades of a blender.  *Id.* at 1328.  The court rejected the patent owner's claim, holding that the instructions originally packaged with defendant's product taught a "stirring action" that the defendant could have reasonably believed was non-infringing, and the amended instructions taught "an undisputedly non-infringing use." *Id.* at 1329.  The court confirmed that the key inquiry was whether the product instructions ***explicitly taught*** an infringing use—not "whether a user following the instructions may end up using the device in an infringing way." *Id.*  at n. 2 (emphasis added).

In contrast, in *Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261 (Fed. Cir. 1986), the Federal Circuit affirmed a finding that the defendant—a distributor of the Rubik's Cube puzzle—actively induced its customers to infringe the patented method for solving the Rubik's

---

GFP gene in 1992 (Prasher et al., *Gene* 111:229-33 [1992]).  As early as 1995, the expression of GFP had been demonstrated in mammalian tumor cells (*see, e.g.,* Kain et al., *Biotechniques* 19(4): 650-55 (1995) and in whole, live transgenic mice (*see, e.g.,* Ikawa et al., *Develop. Growth Diff.* 37: 455-59 [1995]).

1    Cube and similar puzzles.  *Id.* at 1272.  Because the puzzle had no non-infringing uses, the court

2    held that the patent owner met its burden of showing induced infringement where the defendant's

3    sales of the puzzles were "extensive" and where the defendant disseminated an instruction sheet

4    and booklet explaining how to solve the puzzles.  *Id.*

5        Like the food blender in *Vita-Mix*, and unlike the puzzles in *Moleculon*, Leica's imaging

6    devices have a wide variety of uses (SOF ¶ 10), and it is "undisputedly possible" to use Leica's

7    imaging devices "without ever practicing the claimed method[s]" of the AntiCancer Patents.

8    *Vita-Mix*, 581 F.3d at 1329.  Indeed, AntiCancer has not alleged otherwise, nor could it.

9    Moreover, though such was found insufficient in *Vita-Mix*, AntiCancer has not identified any

10   instructions for use given by Leica that would even arguably lead to infringement of the

11   AntiCancer Patents, let alone instructions ***explicitly instructing*** an infringing use.  AntiCancer

12   fails to point to any materials (such as the instruction sheet and booklet in *Moleculon*) that Leica

13   allegedly used to instruct third parties to perform even one of the methods claimed in the

14   AntiCancer Patents.  AntiCancer cannot carry its burden on summary judgment without such

15   evidence.

16       In addition to failing to instruct the methods of the AntiCancer Patents, Leica's

17   promotional materials show that Leica's imaging devices may be used for a wide variety of *non-*

18   *infringing* applications.  For example, the brochure for the Leica DMI4000 B describes Leica's

19   DMI line of microscopes as "having an ideal solution for ***every application***," including "research

20   activities" that are "***multifaceted***" or "[i]nnovative."  (Mangum Decl., Exh. 14, p. 4 (emphasis

21   added).)  Similarly, the brochure for Leica's MZ16 FA referenced at paragraph 30 of the Second

22   Amended Complaint describes Leica's MZ16 FA as having multiple uses:  "From stand to

23   camera, the equipment of the Leica MZ16 F can be ***completely customized to match any***

24   ***required research***, training and documentation task and ergonomically set up ***for any working***

25   ***situation***."  (*Id.*, Exh. 15, p. 6 (emphasis added).)  Further, the brochure for the Leica MZ FLIII

26   and the Technical bulletin for the Leica M165 FA each list a wide variety of uses for those

27   devices, including uses in the areas of anatomy, biology, electronics, semiconductors, oils,

28   metalworking, papermaking, and art restoration.  (Burke Decl., Exh. 1 at 9 & Exh. 2 at 6-7.)

1    Accordingly, the very materials that AntiCancer uses to support its claims reveal that

2    AntiCancer's claims are unsupportable.

3        Because Leica's product manuals do not instruct the methods claimed in the AntiCancer

4    Patents, and because the accused Leica devices have a wide variety of uses, the product manuals

5    are insufficient to create an inference that Leica intended for others to infringe the AntiCancer

6    Patents. *Vita-Mix,* 582 F.3d at 1329 ("Especially where a product has substantial non-infringing

7    uses, intent to induce infringement cannot be inferred even when the defendant has actual

8    knowledge that some users of its product may be infringing the patent.").  Further, as this Court

9    properly held in dismissing AntiCancer's claims in the First Amended Complaint, the fact that

10   Leica sells its imaging devices is not enough because "the sale, without more, of a device

11   capable of such noninfringing use will not establish liability for inducement."  (Order Granting

12   Defendant's Motion to Dismiss (Dkt. 26) at 5, quoting *Dynacore,* 363 F.3d at 1276 n.6.)

13            **4.    AntiCancer's Pre-2006 "Evidence" Of Inducement Is Irrelevant.**

14       Though substantively insufficient in any event, one of the publications on which

15   AntiCancer relies in support of its inducement claim is also temporally insufficient as a matter of

16   law.  AntiCancer cites a 2004 publication as "evidence" that Leica induced scientists from the

17   University of Minnesota and the University of North Carolina, Chapel Hill to infringe the

18   AntiCancer Patents.  (SAC ¶ 21.)  It is undisputed, however, that AntiCancer did not notify Leica

19   of the existence of the AntiCancer Patents until at least 2006.  (SOF ¶ 2.)  Because inducement

20   requires knowledge of the existence of the infringed patent(s) and the specific intent to

21   encourage another's infringement, AntiCancer's claim that Leica induced those entities to

22   infringe fails as a matter of law for this additional reason.  *E.g., Ricoh Co., Ltd. v. Quanta*

23   *Computer Inc*., 550 F.3d 1325, 1342 (Fed. Cir. 2008) ("If the accused infringer did not know its

24   products might infringe, it would not have been able to form the intent necessary for a finding of

25   liability [for induced infringement].").

26

27

28

5. **Courts, Including This Court, Have Rejected Similar Attempts By AntiCancer To Prove Inducement.**

This is not the first time AntiCancer unsuccessfully attempted to rely on a defendant's marketing materials as evidence that the defendant actively induced its customers to infringe the AntiCancer Patents.  In *AntiCancer, Inc. v. Fujifilm Med. Sys. U.S.A., Inc.*, 09-CV-1311-GPC JMA, 2013 WL 947397 (S.D. Cal. Mar. 12, 2013), AntiCancer pointed to marketing materials for Fujifilm's LAS-4000 multi-color fluorescence imaging system as evidence that Fujifilm induced its customers to perform the methods of the '038 and '159 Patents.  *Id.* at *9.  The accused Fujifilm imaging system had multiple uses, and AntiCancer failed to provide any evidence that Fujifilm used its marketing materials to induce acts that infringed the '038 and '159 Patents.  *Id.* at *10.  Accordingly, this Court granted Fujifilm's motion for summary judgment, holding that the marketing materials were "insufficient evidence to support the finding that the materials induced others to perform some or all of the steps of AntiCancer's method claims." *Id.*

AntiCancer pursued the same strategy in *AntiCancer, Inc. v. Berthold Technologies, U.S.A., LLC*, 3:11-CV-457, 2013 WL 625363 (E.D. Tenn. Feb. 20, 2013).  It lost.  In that case, which was transferred from this Court to the Eastern District of Tennessee, AntiCancer claimed that researchers at the Koch Institute for Integrative Cancer Research at MIT used defendants' Night OWL imaging device to infringe the '038 patent.  *Id.* at *4.  As "evidence" of the alleged direct infringement, AntiCancer pointed to two academic papers authored by MIT researchers that mentioned use of the Night OWL device to perform the experiments detailed in the papers.  *Id.*  As "evidence" of the defendants' alleged acts of inducing infringement, AntiCancer pointed to a marketing brochure and a PowerPoint presentation, both of which instructed users how to use the accused device to conduct fluorescence imaging.  *Id.*

Nonetheless, the court granted defendants' motion for summary judgment of non-infringement because AntiCancer failed to identify any evidence to show that defendants induced MIT to infringe the '038 Patent.  The court concluded:

1
2
3

> As plaintiff has not presented evidence showing that MIT received the brochure or PowerPoint from defendants, and defendants have presented evidence that they did not send either of the materials to MIT, the Court concludes that there is no genuine issue of material fact as to whether defendants induced the MIT researchers to infringe the '038 patent.

4  *Id*. at *6.

5       Here, AntiCancer offers a stripped-down theory of infringement virtually identical to the

6  theories rejected in *Fujifilm* and *Berthold*.  To avoid the same fate, and to overcome summary

7  judgment in this case, AntiCancer should have reasonably expected that actual evidence, not

8  unsubstantiated allegations, would be required.  AntiCancer had every opportunity to adduce

9  such evidence if it existed through the dedicated discovery period provided in the Phase I

10  Scheduling Order entered by the Court at the parties' request.  Instead, AntiCancer stuck to its

11  script and declined to pursue any discovery in this case, thereby forcing Leica to incur significant

12  attorneys' fees and costs to defend against AntiCancer's unfounded claims.  For the same

13  reasons that AntiCancer's claims were dismissed on summary judgment in *Fujifilm* and

14  *Berthold*, this Court should award summary judgment in favor of Leica.

15  **VI.  THIS CASE SHOULD BE DECLARED EXCEPTIONAL AND THE COST OF THIS SUMMARY JUDGMENT MOTION SHIFTED TO ANTICANCER.**

16

17       AntiCancer's failure to dismiss this case on its own volition and putting Leica to the

18  expense of filing (and the Court of hearing) this motion despite AntiCancer's (1) utter failure of

19  proof, (2) conscious decision not to undertake any discovery during a dedicated fact discovery

20  period adopted at its request, and (3) willful disregard of other court decisions dismissing the

21  very same type of claims asserted by AntiCancer in this case on summary judgment for the same

22  failure of proof present here, warrants finding this case exceptional and awarding Leica its

23  attorneys' fees in pursuing this motion.

24       Awarding fees to deter AntiCancer's repeated, vexatious litigation tactics is authorized

25  both by statute, and the Court's inherent authority to manage its caseload and control the actions

26  of parties before it.  *See* 28 U.S.C. § 1927 (unreasonable and vexatious litigation); 35 U.S.C. §

27  285 (exceptional case); *F.D. Rich Co., Inc. v. U.S. for Use of Indus. Lumber Co., Inc.*, 417 U.S.

28  116, 129 (1974) (courts have inherent authority to award prevailing-party attorneys' fees when

the non-prevailing party acts "in bad faith, vexatiously, wantonly, or for oppressive reasons"). An attorney engages in unreasonable and vexatious conduct under section 1927 by continuing to litigate patent infringement claims knowing that his or her client cannot meet the standard for infringement. *Phonometrics, Inc. v. Westin Hotel Co*, 350 F.3d 1242, 1248 (Fed. Cir. 2003) (affirming award of attorney's fees and costs to accused infringer when case "no longer remained within the normal bounds" after claim construction order). Knowing or reckless conduct meets this standard in the Ninth Circuit, *Lahiri v. Universal Music & Video Distribution Corp.*, 606 F.3d 1216, 1219 (9th Cir. 2010), and as one court explained, "when it becomes apparent that discoverable evidence will not bear out the claim, the litigant and his attorney have a duty to discontinue their quest." *Avirgan v. Hull*, 932 F.2d 1572, 1582 (11th Cir. 1991) (affirming award of fees and costs pursuant to § 1927).

The vexatious pursuit of litigation may also lead to a determination that the case was "exceptional" under section 285 of the Patent Act. A case may be deemed "exceptional" where there has been "misconduct during litigation, vexatious or unjustified litigation, conduct that violates Federal Rule of Civil Procedure 11, or like infractions." *MarcTec v. Johnson & Johnson,* 664 F.3d 907, 916 (Fed. Cir. 2012). Litigation misconduct has many varieties including lodging frivolous filings and engaging in vexatious or unjustified litigation. *Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.*, 549 F.3d 1381, 1387-1388 (Fed. Cir. 2008). An exceptional case finding may be warranted in cases (such as this one) where a patentee "prolongs litigation in bad faith." *MarcTec,* 664 F.3d at 916.

An award of attorneys' fees is appropriate here because AntiCancer, without any evidence to support its induced infringement claim, "continued to press its infringement action 'knowing that its claim could not meet the … standard for infringement.'" *Phonometrics*, 350 F.3d at 1246. The Court's prior decision on Leica's Motion to Dismiss clearly identified the elements AntiCancer was obligated to prove in order to support a claim of induced infringement. (Order Granting Defendant's Motion to Dismiss (Dkt. 26).) AntiCancer requested and was granted a nearly five-month period to undertake discovery to support its claim of induced infringement. Yet, after that period, and knowingly lacking such evidence, AntiCancer

1    steadfastly refused to dismiss this lawsuit, putting Leica to the expense of filing for summary

2    judgment.

3         AntiCancer knew or should have known that its induced infringement claims against

4    Leica could not withstand summary judgment. Other courts have rejected AntiCancer's

5    inducement claims against other parties for the very failures of proof that doom its inducement

6    claim against Leica here. *See* Arg. Sec. V.B.5, *supra*.  Yet, despite having committed to the

7    Court and to Leica at the March 14, 2013 Case Management Conference that it would dismiss

8    the lawsuit if it did not uncover evidence supporting its claim, AntiCancer forewent any

9    additional discovery and now stands before the Court with no support for its claim beyond what

10   it asserted in its Second Amended Complaint.  A fee award is warranted here to compensate

11   Leica and to deter further improper actions by AntiCancer and others.[5]

12   **VII.   CONCLUSION**

13        AntiCancer has failed to adduce any evidence that Leica actively induced its customers to

14   infringe the AntiCancer Patents.  AntiCancer cannot prove that any Leica customer used a Leica

15   device to infringe the AntiCancer Patents, nor can it prove that Leica engaged in any act with the

16   specific intent to knowingly induce its customers to infringe those patents.  Accordingly, the

17   Court should enter summary judgment of noninfringement on each of the AntiCancer Patents.

18   The Court should also award Leica its costs and attorneys' fees in pursuing this motion, and

19   dismiss with prejudice this lawsuit in its entirety.

20

21

22

23

24

25

26

27   [5] Leica will submit a sworn accounting of its costs and attorneys' fees incurred in bringing this
     Motion for Summary Judgment if the Court grants Leica's fee request.

28

1   May 15, 2013                         Respectfully submitted,

2                                        PARSONS BEHLE & LATIMER

3

4                                        By:  _/s/ Dana M. Herberholz_____

5                                             Dana M. Herberholz

6                                        Attorneys for Defendant
                                         LEICA MICROSYSTEMS, INC.
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## __CERTIFICATE OF SERVICE__

2       The undersigned certifies that the above was served by the Court's ECF system upon the

3    below listed counsel of record this 15th day of May, 2013.

4

5       Matthew D. Valenti
        Anticancer, Inc.
        7917 Ostrow Street
6       San Diego, CA 92111

7       Counsel for Plaintiff
        Anticancer, Inc.
8
                                    By /s/ Dana M. Herberholz
9                                      Dana M. Herberholz

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28